# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

No. _1 : 19- mJ- 03130 - Becerra_

**UNITED STATES OF AMERICA**

**vs.**

**MARK STRAND,**
        a/k/a "Grant North,"
        a/k/a "Greyknight6,"

        **Defendant.**

_____/

## CRIMINAL COVER SHEET

1.  Did this matter originate from a matter pending in the Northern Region of the United
    States Attorney's Office prior to October 14, 2003? _____ Yes __X__ No

2.  Did this matter originate from a matter pending in the Central Region of the United States
    Attorney's Office prior to September 1, 2007? _____ Yes  __X__ No

Respectfully submitted,

ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY

BY: _____

ILHAM A. HOSSEINI
Assistant United States Attorney
Court ID No. A5501904
99 N.E. 4th Street, 8th Floor
Miami, FL 33132
Tel: (305) 961-9297
Fax: (305) 536-4699
Email: ilham.hosseini@usdoj.gov

AO 91 (Rev. 08/09)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the

Southern District of Florida

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| | ) | Case No.  1 : 19 - mJ - 03130 - Becerra |
| MARK STRAND, | ) | |
| a/k/a "Grant North," a/k/a "Greyknight6," | ) | |
| | ) | |

*Defendant(s)*

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____April 19, 2017 - July 12, 2019_____ in the county of ___Miami-Dade and Broward___ in the

___Southern___ District of _____Florida_____ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 18, United States Code, Sections 2422(b) | Knowingly attempting to coerce and entice a minor to engage in sexual activity |

This criminal complaint is based on these facts:

SEE ATTACHED AFFIDAVIT.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

_____Drew R. Steinmetz, Special Agent, FBI_____
*Printed name and title*

Sworn to before me and signed in my presence.

Date: **7.12.19**

_____
*Judge's signature*

City and state: _____Miami, Florida_____

_____JACQUELINE BECERRA, U.S. Magistrate Judge_____
*Printed name and title*

## SEALED AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Drew R. Steinmetz, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code.  That is, I am an officer of the United States who is empowered by law to conduct investigations of, and make arrests for, violations of Title 18 of the United States Code.

2.      I am a Special Agent with the Federal Bureau of Investigation ("FBI"), and have been so employed since 2016.  I am currently assigned to the Miami Field Office Crimes Against Children Squad, which targets individuals involved in sexual exploitation of children.  As part of my duties, I investigate crimes involving the sexual exploitation of minors including the sex trafficking of children and various criminal offenses related to the production, distribution, receipt, and possession of child pornography.  I received training on the proper investigative techniques for these violations, including the use of surveillance techniques, undercover activities, and the application and execution of arrest and search warrants. I have conducted and assisted in numerous child exploitation investigations, and have executed search warrants that have led to seizures of child pornography.

3.      The information set forth in this Affidavit is provided in support of the attached criminal complaint, charging Mark Strand, a/k/a "Grant North," a/k/a "Greyknight6," with attempted coercion and enticement of a minor to commit a sexual crime, in violation of Title 18, United States Code, Section 2422(b).

4.      The information contained in this Affidavit is based on my personal knowledge, as well as information relayed to me by other law enforcement agents and officers involved in this

investigation. I have not included in this Affidavit each and every fact known to me or to other law enforcement officers surrounding this investigation. Rather, I have included only those facts that I believe are necessary to establish probable cause to arrest the Defendant for the violation above.

## PROBABLE CAUSE

5.        On or about March 19 and 20, 2017, a law enforcement officer acting in an undercover capacity (the "UC") posted an advertisement on a public messaging forum located on the internet. The advertisement used language that is commonly associated with individuals seeking children for sexual purposes. The advertisement stated the following: "Younger dad looking for other like minded. Daughter here . . . Love to meet others with similar interests." The advertisement also listed a texting application with a user name for the UC so that individuals could contact the UC.

6.        On April 19, 2017, the UC received an email response from "Grant North" concerning the posted advertisement. The response read, "I am replying because I am totally turned on by taboo daddy – daughter/family play. . . . I was checking the Miami CL ads to see if someone was into incest play."

7.        On April 20, 2017, the UC replied, "I have a daughter who is very Youngggg. I don't know if that's cool with you. Very taboo and no limits here." About an hour later, Grant North replied "Yes, very young is cool with me as is very taboo and no limits" and "I won't be mentioning a specific age, but perhaps we can exchange phrases that indicate what age range is meant."

8.        On April 20, 2017, during their continued conversations, the UC suggested the use of a texting application, Kik, as opposed to the continued use of email for the purposes of

2

communication. On the same day, Grant North replied "Have to go the ATT store because I don't currently have a data plan on my phone" and "I'm '52 and live in the Kansas City area."

9.    On April 23, 2017, Grant North provided his phone number to the UC, "My phone number is 785-505-0143." A few days later, on April 26, 2017, Grant North discussed his availability during the summer to come to Miami "for one or more visits." He also stated that he was "looking forward to talking, communicating/photos on Kik, and coming down to share exciting experiences."

10.    On April 27, 2017, the UC sent a message on Kik to user name "greyknight8," with a display name of "Mark Strand" that read, "Hello Grant. It's fl dad." The UC did not receive a reply to the message through the texting application.

11.    On May 1, 2017, "Grant North" notified the UC via email that he reset the texting application name from "Greyknight8" to Greyknight6" and "But I got it taken care of just now over lunch hour and received the confirmation on my Greyknight4@sunflower.com email." Additionally, the user name "Greyknight6," with a display name of "Grant North," initiated contact with the UC through the texting application and stated "Sent you an email," and that he changed his Kik name to "Greyknight6." Thereafter, the UC and Grant North continued their conversations on Kik.

12.    On the same day, the UC stated "My daughter is 9" and "I've been active with her since she was 2." Greyknight6 replied "Exciting! I assume wife/mom not in the home. Can you share pics? And how your parties go? Am happy to provide assurances to you that I am legit. Very hopeful that you will allow me to come for an exciting visit."

13.    Later that day, the UC sent an image of what purported to be the UC's 9-year old daughter. Greyknight6 thanked him and added "I find the combo of innocent yet alluring to be

3

very attractive and powerful." He also provided his phone number once again and invited the UC to call him.

14.    The UC and Greyknight6 continued texting over the next few days, with Greyknight6 asking about parties with "lil pretties" and "what could I do to be allowed to attend/participate." He also noted, "I'll do whatever I can to be a trusted & valued guest."

15.    On May 2, 2017, Greyknight6 asked the UC to "pls send something fun if you can." In response, the UC sent two images of his purported 9-year old daughter and they continued texting each other.

16.    On May 5, 2017, Grant North sent an email to the UC stating, "I attached a photo that matches my photo on my employer's website (Univ of KS School of Business), so you have my real face, real name, real phone, real email, and my home address is a Google click away – all easily verifiable." Attached to that email was a photo of an older man with grey hair and beard.

17.    On May 15, 2017, Grant North sent an email to the UC saying "it would be great to attend a private or group get-together sometime. At parties, I follow the lead of the host or other attendees, so I will participate AFTER someone else has begun the activity."

18.    Results from an administrative subpoena sent to the texting application company for username "greyknight6" revealed that the account was assigned to a registered owner who had provided email address "Greyknight4@sunflower.com." Grant North stated that this was his email address, as noted in paragraph 11 above.

19.    Also pursuant to a subpoena requesting subscriber information that pertained to the greyknight6 account, the texting application provided IP address 129.237.108.11 and 24.127.125.172 as IP addresses utilized by greyknight6 during the timeframe of his chats. The query revealed that the former IP address is registered to the University of Kansas and the latter is

4

registered to Wide Open West.

20.     On May 8, 2017, an administrative subpoena was sent to Wide Open West. According to the returned subpoenaed documents, during the time that the individual with the texting application username "greyknight6" utilized the IP address, it was assigned as follows: Mark Strand, 1030 Jana Drive, Lawrence, KS 66049 and markstrand@sunflower.com.

21.     The UC and user "Greyknight6" (hereinafter referred to as "STRAND") continued exchanging text messages using the texting application.   STRAND continued expressing his interest in meeting up to engage in sexual activities with the UC's purported 9-year old daughter.

22.     On May 19, 2017, STRAND sent a text message to the UC, saying "Let's say we both like 9-12 yr old scotch.   When I come to FLA, I don't know what the lickher, I mean liquor laws are, so my rule would be to watch you unwrap your 9 yr old scotch and put your mouth on before I sample and pay for it.   Fair enough?   Pls send proof of no law."

23.     The UC then sent another image of his purported 9-year old daughter.   The UC and STRAND continuing texting for some months.

24.     On January 26, 2018, STRAND stated "I would like to lick and put my tongue inside the opening of the 'bottle.'"   STRAND and the UC discussed travel arrangements for STRAND to fly to Florida to engage in sexually explicit conduct with the UC's purported 9-year old daughter.   The UC and STRAND continued to communicate through the texting application until February 2, 2018.

25.     On February 2, 2018, the UC contacted STRAND at his provided phone number of 785-505-0143.   The phone call was approximately 4 minutes in duration.   STRAND and the UC discussed having similar interests in regards to "scotch."   STRAND asked the UC how he keeps the mother of the purported 9-year old daughter from being informed and if the purported 9-year

old enjoyed it. STRAND stated "I've always had a strong interest in incest." STRAND asked when they could talk next and they discussed possibly speaking the next day.

26. On February 7, 2018, the UC attempted to contact STRAND via a telephone call, but was unable to speak with STRAND and left a voice mail message requesting for him to call back. Communications ceased for approximately a year and a few months.

27. Between the dates of February 7, 2018 and May 9, 2019, law enforcement did not make attempts to engage STRAND in conversations.

28. On May 9, 2019, STRAND initiated contact with the UC phone number and left a voice mail message approximately 1 minute and 49 seconds in duration from STRAND's provided phone number (785-505-0143). He stated "This is, uh, Grant in Lawrence, Kansas." He also stated that he was retired and desired to travel and "share some scotch, uh, some probably 13 year old scotch."

29. On May 10, 2019, a law enforcement officer acting in an undercover capacity ("UC 2") sent a text message to STRAND's provided phone number (785-505-0143) and STRAND discussed his desire to speak with UC 2 on the telephone.

30. On May 11, 2019, STRAND sent a text stating, "I really want to come visit soon. What can we work out?" STRAND stated he still lived in Kansas and "I would love to please her in any way that is ok with you and her." UC 2 stated "It's been so long I forgot what we discussed." STRAND replied, "We did not discuss specifics. But I would love to do anything and everything."

31. UC 2 stated "How old was she last time we talked?" and STRAND replied "12 – is she 13 now?" UC 2 replied "No, is that a problem?"; "Know you fell off last time;" and "Maybe this isn't for you." STRAND replied "What age now? Last time I just had too much going on. I can make trip plans this time. Do you still connect with other dads and daughters? Please let me

6

know on age." UC 2 replied "She's still 12." STRAND replied "The 'scotch' was 9 in the middle
of 2017 or so. So some 12 yr old scotch would be great now. When would be a good time to
travel?"

32.     On that same day, May 11, 2019, STRAND discussed traveling to Florida with UC
2. STRAND stated "I'm more than interested. I'm committed to connecting with you and [Name
of purported 12-year old]. And sharing some scotch." UC 2 replied "Only thing left is a small
donation to [Name of purported 12-year old] and she's all yours;" "And she loves Woody from
Toy Story btw." STRAND replied "Woody's cool as is the other. What number is best?" UC 2
replied "Know you're spending $ to come down here for the flight. How's $100?" STRAND
replied "Perfectly fine."

33.     STRAND and UC 2 discussed speaking by telephone on May 13, 2019.

34.     On May 13, 2019, a law enforcement officer acting in an undercover capacity ("UC
3") contacted STRAND on his provided phone number (785-505-0143) and they discussed
available weekends for STRAND to come to Florida "to play" with UC 3's purported 12-year old
daughter. STRAND stated that he has retired from his university employment and has a more
predictable schedule. UC 3 mentioned that they have a "delicate inclination" and have to be very
careful. STRAND stated that he is also careful and that he would send a text as a cover, adding
"you know what our mutual interests are, but it's just scotch" and then laughed.

35.     UC 3 then stated several rules that STRAND would have to abide by while
engaging in sex with the purported 12-year old daughter. UC 3 said STRAND cannot do anything
that would hurt his purported 12-year old daughter. UC 3 stated that if something hurts, then
STRAND has to take a break. STRAND agreed, adding that he would not do something that
would hurt "or we're relaxing until it doesn't hurt." UC 3 also stated STRAND cannot tell anyone

7

about this. STRAND replied, "Trust me, there isn't anybody that I want to tell, other than you." UC 3 subsequently stated that "not for blow jobs and stuff, but for intercourse and fucking her, you gotta use a condom." UC 3 explained that the reason is to avoid pregnancy, which would be problematic for both of them. STRAND stated, "makes sense, that's what we would do." UC 3 then stated that gifts help warm her up. STRAND then stated that the UC had previously mentioned that the purported daughter likes Woody from Toy Story and asked if UC 3 had any suggestions. UC 3 said he would send STRAND some suggestions. UC 3 mentioned that he would like a donation and STRAND agreed to it.

36.    UC 3 asked STRAND what details he would like to be shared with the purported daughter. STRAND stated, "that I look like a professor;" that he is "distinguished looking," 5'7," fit, extremely clean, and averaged sized guy.

37.    STRAND also described a previous situation at a laundromat where he saw 8-year old twins with their father, noting "you could tell from their bodies that those are going to be hot girls" and "I started fantasizing." He also stated that he perceived the father to be a single dad and "that would be so tempting." STRAND then asked UC 3 some questions about when UC 3 started "playing" with his purported daughter and how he reaches out to other dads.

38.    STRAND then remarked, "as far as my physical build, I'm fit and in the package department, 5 inches so that probably helps, but thick." UC 3 responded that thick can be worse than long but that STRAND could use lubricated condoms. STRAND also referenced one of the images he had received from the UC, noting that he looked at it many times and admired it. STRAND requested another photo and UC 3 stated that he would have to see if he could work something out.

8

39.     UC 3 also told STRAND that the purported daughter cannot know that UC 3 is receiving money from STRAND: she "can never know that you're paying me to be with her," and STRAND agreed to keep it quiet.

40.     On May 14, 2019, STRAND sent UC 2 a message stating "Just to follow up on our conversation yesterday. This text is to confirm and clarify that our conversations via phone, email, text, and Kik are mutually just fantasies and that neither of us are going to do anything that is illegal in any state. I'll come to Miami to meet you so we can talk about our fantasies, but we'll just talk. Any payment that I make to you will be for a real and actual bottle of 12 yr old scotch. Any gift I give to anyone you know will not be in exchange for anything from them. I'm confirming that our past current and future conversations are just role play and are not going to be acted on in a real life by either of us. I will come to Miami for real and we can meet and go from there." UC 2 replied "I get it lol. We can't wait to you." UC 2 and STRAND continued to discuss a future telephone call.

41.     On June 6, 2019, UC 3 contacted STRAND on his provided phone number (785-505-0143) and they further discussed STRAND's visit to Florida. UC 3 asked STRAND about his expectations and if he would "try to do anal." STRAND responded that "I probably would not do that, but probably everything else." UC 3 sought to clarify, "so like just regular sex and blow jobs and stuff," to which STRAND agreed and added "and oral on her."

42.     STRAND and UC 2 continued to send texts discussing STRAND's travel to Florida to engage in sexually explicit conduct with the purported 12-year old daughter.

43.     On June 18, 2019, STRAND stated in a text "Would like to talk more explicitly by phone, but want to know I did not become interested in this from anything creepy. Rather, it came

9

slowly from thinking about having a daughter and realizing I would like to show her love and pleasure in this way."

44.     On June 19, 2019, UC 2 stated in a text "Maybe this isn't for you." STRAND replied "Your question surprises me.  Can you talk by phone now?"  UC 2 replied "Just feels familiar to 2017 when you feel off the map."  STRAND replied "No worries this time."

45.     UC 2 and STRAND discussed STRAND purchasing a flight ticket through Spirit Airlines. STRAND discussed his travel plans with sufficient detail.  Thereafter, law enforcement contacted Spirit Airlines and confirmed that a passenger named "Mark STRAND" had in fact purchased a flight from Kansas to Florida with the same details that STRAND had provided.  UC 3 and STRAND made plans to meet at a location in Miami Beach, Florida for the purpose of engaging in sexual activity with the purported 12-year old daughter.

46.     On June 28, 2019, UC 3 contacted STRAND at his provided phone number of 785-505-0143 and the two discussed STRAND's upcoming trip to Miami Beach.  UC 3 told STRAND that condoms and lube are expensive on the beach and STRAND thanked him for the heads up. They also discussed future trips.

47.     On July 9, 2019, as a result of a subpoena to AT&T, law enforcement identified "Mark STRAND" as the subscriber of the telephone number 785-505-0143 (STRAND's provided phone number).

48.     On July 9, 2019, UC 2 sent an email message to greyknight4@sunflower.com, following up on STRAND's request to send him suggestions for which Toy Story toy STRAND should purchase.  The email contained a link to a Toy Story 4 Woody doll and an image of Sour Patch Watermelon candies.  STRAND replied and stated "Let's talk today at lunch or this evening by phone not text (or tomorrow – just sometime at your convenience).  I need to ensure that I don't

10

have any unintended legal exposure due to the nature of our conversations. I'm getting packed (not much to bring) and organized, etc. for the flight Fri. Thanks. Grant."

49.     On July 9, 2019, UC 3 called STRAND and they discussed details of the trip, including what time his flight lands; that STRAND was renting a car; STRAND requesting the address for the meeting location; and STRAND expressing his need for discretion, saying "I have to be careful to not walk into a Dateline situation." UC 3 stated that their story was that they would enjoy some scotch.

50.     On July 10, 2019, STRAND sent a message to UC 2 expressing concern about "possible legal exposure" related to the personal nature of their texts and phone conversations and that they relate to fantasy only and they would not act on any of them. He also stated that he would not bring the personal hygiene items with him that would "suggest that by having those items with me that I am traveling to Miami to engage in any acts that are illegal." However, STRAND said he would reimburse UC 2 for using UC 2's supply. STRAND further stated that once it is clear to him that UC 2 is not law enforcement, "you and I will be able to proceed."

51.     On July 10, 2019, UC 3 and STRAND spoke via telephone again and UC 3 clarified the purpose of STRAND's text, that it was meant to cover them in case something happens. STRAND stated, "that's my story and I'm sticking to it," and "until I know everything is okay, that's what I have to say." UC 3 then said that he would tell his purported daughter that his friend would play with her, to which STRAND replied, "I'll be there."

52.     On July 11, 2019, STRAND sent a message stating that he wants mutual assurances that neither party is trying to cause legal trouble and that STRAND is not in law enforcement. He requested that UC 2 respond in kind, confirming that he is also not in law enforcement. STRAND reiterated that his prior statements on the phone were just fantasies. "However, once we have met

11

in person and gone to your home for my visit and have established mutual trust, you and I can be

then be [sic] completely free to discuss what fun activities there are to do while I'm visiting you.

I am looking forward to sharing our mutual interest."

53.     On July 12, 2019, law enforcement confirmed that an individual matching the

description of STRAND is at the Kansas City International Airport gate awaiting to board his Spirit

Airlines flight bound for Detroit.

## CONCLUSION

54.     Based on the aforementioned factual information, I respectfully submit that there is

probable cause to believe that MARK STRAND knowingly attempted to coerce and entice a minor

to engage in sexual activity, in violation of Title 18, United States Code, Section 2422(b).

**FURTHER YOUR AFFIANT SAYETH NAUGHT.**

_____
Drew R. Steinmetz, Special Agent
Federal Bureau of Investigation (FBI)

Sworn to and subscribed before me
this _12_ day of July, 2019 in Miami, Florida

_____
HONORABLE JACQUELINE BECERRA
UNITED STATES MAGISTRATE JUDGE

12